UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――

CRAIG L. JOHNSON,

                                        Plaintiff,

        v.                                                              9:18-CV-0096
                                                                        (DNH/ML)

LISA MCINERNEY, NURSE, formerly known
as Nurse McInerney, CATHERINE PIENKOWSKI
formerly known as Nurse Punkoski, and DR.
JENNIFER KEEFER,

                                        Defendants.

―――――――――――――――――――――――

APPEARANCES:

CRAIG L. JOHNSON
Plaintiff, *pro se*
425 Hamilton Street
Schenectady, NY 12305

O'CONNOR, O'CONNOR, BRESEE
& FIRST, P.C.                                       ANNE M. HURLEY, ESQ.
Attorney for Defendants
20 Corporate Woods Boulevard
Albany, NY 12211

**MIROSLAV LOVRIC**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION

    This matter has been referred to me for Report and Recommendation by the Honorable

David N. Hurd, United States District Judge.  Currently before the Court, in this civil rights

action filed by Craig L. Johnson ("Plaintiff") against Lisa McInerney ("McInerney"), Catherine

Pienkowski ("Pienkowski")[1], and Dr. Jennifer Keefer ("Keefer") ("Defendants") is Defendants'

motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Dkt. No. 104.  For the reasons

set forth below, I recommend that Defendants' motion be granted.

## I.  RELEVANT BACKGROUND

### A.  Plaintiff's Claims

Liberally construed, Plaintiff's Second Amended Complaint asserts the following two

causes of action: (1) a claim of medical indifference against Defendants; and (2) a claim of

retaliation against Defendants.  Dkt. No. 51.

### B.  Facts[2]

_____

[1]    In support of the motion for summary judgment, Defendant provided an Affidavit with the correct spelling of her name.  While the caption has not been amended, the Court will refer to Defendant as Pienkoski throughout this decision.

[2]    Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts.  The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorneys' affidavits.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises.  The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.  The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

Local Rule 7.1(a)(3).

    Defendants filed a Statement of Material Facts.  Dkt. No. 104-19.  Plaintiff responded and admits the facts contained in certain paragraphs of Defendants' Statement of Material Facts. Dkt. No. 111.  Additionally, Defendants and Plaintiff annexed exhibits to their submissions.  Dkt. No. 104-1 through 104-17; Dkt. No. 111-4; Dkt. No. 112.  The parties do not object or challenge the authenticity of the documents.  Therefore, to the extent that the "facts" asserted by the parties are supported by the record, the undersigned will consider the facts and

From July 27, 2016 until March 21, 2017, Plaintiff was incarcerated as a pretrial detainee at the Saratoga County Jail ("Saratoga C.J."). Dkt. No. 111 at ¶ 1; Dkt. No. 111-3 at ¶ 4. At the relevant time, Defendants were licensed and credentialed medical professionals employed as medical providers at the Saratoga C.J. *Id.* at ¶ 2.

On July 28, 2016, Plaintiff was assessed and examined by medical staff. Dkt. No. 104-13 at 9-10.[3] During the evaluation, Plaintiff advised that he was diabetic and that he recently sustained a right shoulder injury. *Id.*

### 1. Medical Treatment Related to Diabetes

At the time of Plaintiff's initial medical evaluation, he was not experiencing any diabetic issues and told staff that he managed his blood sugar levels through diet and exercise. Dkt. No. 111 at ¶ 4; Dkt. No. 111-1 at ¶ 2. From July 28, 2016 until October 13, 2016, medical and nursing staff monitored Plaintiff's blood sugar on a weekly basis. Dkt. No. 104-13 at 75-86; Dkt. No. 111-1 at ¶ 3. On October 14, 2016, Keefer prescribed Metformin to treat Plaintiff's diabetes, placed him on a diabetic diet, and ordered lab work. Dkt. No. 104-13 at 17, 87-94, 127. Defendants also began testing Plaintiff's sugar levels, every day, and continued to do so until he was transferred out of the Saratoga C.J. in March 2017. *Id.* at 75-86. On October 15, 2016, Plaintiff refused to take his prescribed medication[4], except

---

relevant exhibits/documents in the context of the within motion. *See U.S. v. Painting known as Hannibal*, No. 07-CV-1511, 2010 WL 2102484, at *1, n.2 (S.D.N.Y. May 18, 2010) (citing *Daniel v. Unum Provident Corp.*, 261 F. App'x 316, 319 (2d Cir. 2008) ("[A] party is not required to authenticate documents on a summary judgment motion where, as here, authenticity is not challenged by the other party)). In light of the procedural posture of the case, the following recitation is derived from the record now before the Court, with all inferences drawn and ambiguities resolved in non-moving party's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

[3]        Citations to page numbers refer to the pagination generated by CM/ECF, not the page numbers generated by the parties.

[4]        At the time, Plaintiff was prescribed and receiving Lipitor, Lisinopril, Prilosec, and Flexeril. Dkt. No. 104-13 at 127-128.

Metaformin, and told the medical providers that the medications "caused his blood sugars to be high." *Id.* at 22; Dkt. No. 111-1 at ¶ 7.  On October 20, 2016, Plaintiff submitted a medical request form complaining, "sugar level too too [sic] high from something other than commissary."  Dkt. No. 104-13 at 28.  The same day, Keefer added Lantus and Novolog to Plaintiff's medication regimen to treat diabetes.  *Id.* at 16, 126-127.

On October 27, 2016, guards searched Plaintiff's cell and found ketchup, mayonnaise, milk, chicken with rice and gravy, a hot dog with a bun, two juices, butter, jelly, pudding, and peanut butter.  Dkt. No. 104-13 at 243.  As a result, Plaintiff was transferred to keeplock.[5]  *Id.*

On November 4, 2016, officers searched Plaintiff's cell and found inappropriate food items.  Dkt. No. 51-1 at 2; Dkt. No. 104-13 at 239-240.  As a result, Plaintiff was transferred to medical keeplock.  *Id.*

From December 2016 until February 2017, Plaintiff randomly refused to accept his diabetes medication.  Dkt. No. 104-13 at 78-82; Dkt. No. 111-3 at ¶ 25.

On February 9, 2017, Plaintiff refused, on two different occasions, to go to the medical unit for blood sugar testing.  Dkt. No. 104-13 at 78.  As a result, Pienkoski ordered Plaintiff placed in medical keeplock.  *Id.* at 19, 23; Dkt. No. 104-16 at ¶ 4.

### 2.  Medical Treatment Related to Right Shoulder

On August 1, 2016, Keefer referred Plaintiff to Dr. Fein at OrthoNY for complaints of pain in his right shoulder.  Dkt. No. 104-13 at 74.  On August 6, 2016, x-rays were taken of Plaintiff's right shoulder.  *Id.* at 97.  On September 1, 2016, Dr. Fein examined Plaintiff and administered a steroid injection.  Dkt. No. 104-15 at 17.  Dr. Fein recommended treatment

---

[5]      The facts related to the type, duration, and parties responsible for this confinement are disputed.

with Flexeril, which Keefer prescribed on September 15, 2016.  Dkt. No. 104-13 at 74, 129; Dkt. No. 104-15 at 17.  With a referral by Keefer, Plaintiff had a follow up appointment with Dr. Fein in October 2016 and, upon Dr. Fein's recommendation, Plaintiff received an MRI of his right shoulder.[6]  Dkt. No. 104-13 at 59-60; Dkt. No. 104-15 at 13-15, 25-26.  At Keefer's request, Plaintiff was evaluated, for a third time at OrthoNY.  Dkt. No. 104-13 at 53; Dkt. No. 104-15 at 22.  In December 2016, Plaintiff was examined by Dr. Silver who opined that Plaintiff suffered from a torn rotator cuff that required surgical repair.  Dkt. No. 104-15 at 10-11.

### 3.  Additional Medical Treatment

During his confinement at the Saratoga C.J., Plaintiff submitted Medical Request Forms with complaints related to spider bites, shoulder pain, eczema, ankle and back pain, blurry vision, blood sugar levels, and respiratory issues.  Dkt. No. 104-13 at 24-32.

In August 2016 and September 2016, Plaintiff complained that he was bitten by a spider and was prescribed two different antibiotics.  Dkt. No. 104-13 at 18, 22, 30.

While incarcerated at the Saratoga C.J., Plaintiff was also treated for complaints of pain and swelling in his testicles.  On September 9, 2016, at Keefer's request, Plaintiff underwent an ultrasound of his scrotum and testicles.  Dkt. No. 104-13 at 95-96.  On September 19, 2016, Keefer referred Plaintiff to Dr. Solga at Saratoga Urology.  *Id.* at 64.

Keefer also referred Plaintiff to an outside provider for two eye examinations.  On November 22, 2016, Plaintiff was examined at Family Vision Care Center and received eyeglasses.  Dkt. No. 104-13 at 55-56.  On December 8, 2016, Plaintiff submitted a Medical

---

[6]    Prior to the MRI, Plaintiff underwent an x-ray of his eye for a possible "foreign body."  Dkt. No. 104-13 at 57; Dkt. No. 104-15 at 14.

Request Form complaining about his eyesight and his prescription glasses. *Id*. at 26.  On December 13, 2016, Plaintiff attended a follow up appointment at Family Vision Care Center. Dkt. No. 104-14 at 3-4.

In December 2016 and January 2017, Plaintiff was treated at Saratoga Hospital Emergency Department for an upper respiratory issue and underwent a pulmonary function test.  Dkt. No. 104-13 at 33-40, 51-52, 54-56.

During his incarceration at the Saratoga C.J., Plaintiff also received medication to treat various medical conditions including high blood pressure, high cholesterol, skin issues, stomach/digestive issues, respiratory issues, and cold symptoms.  Dkt. No. 104-13 at 15-18, 114-132.

### C.  Parties' Briefing on Defendants' Motion for Summary Judgment

### 1.  Defendants' Memorandum of Law

Generally, in support of their motion for summary judgment, Defendants assert two arguments.  Dkt. No. 104-18.

First, Defendants argue that Plaintiff's Fourteenth Amendment medical indifference claims must be dismissed because (a) the medical records do not support Plaintiff's allegation that Defendants deprived Plaintiff of medical care related to any medical issues; (b) there is no evidence that Defendants consciously and deliberately disregarded a substantial risk of serious harm; and (c) Plaintiff's claims amount to a disagreement over the proper medical treatment and thus, do not give rise to a constitutional violation.  Dkt. No. 104-18 at 3-6; Dkt. No. 113 at ¶¶ 3-6.

Second, Defendants argue that Plaintiff's First Amendment retaliation claims must be

dismissed because (a) Plaintiff's confinement in medical keeplock was not an "adverse action;" (b) there is no causal connection between Plaintiff's protected conduct and the alleged adverse action; and (c) Defendants would have taken the same action, absent the protected conduct.  Dkt. No. 104-18 at 7-8.

In support of the motion for summary judgment, Defendants submitted Plaintiff's medical file; disciplinary records; grievances; and Affidavits from Keefer, McInerney, and Pienkoski.

## 2.  Plaintiff's Opposition

Generally, in opposition to Defendants' motion for summary judgment, Plaintiff filed a response to Defendants' Statement of Material Facts (Dkt. No. 111), an additional Statement of Material Facts (Dkt. No. 111-1)[7], an affidavit (Dkt. No. 111-3), and a memorandum of law (Dkt. No. 111-2).

First, Plaintiff argues that Defendants were deliberately indifferent to his serious medical needs in the following respects (a) Defendants denied and delayed treatment for diabetes; and (b) Defendants delayed shoulder surgery that was recommended by an outside provider. Dkt. No. 111-2 at 2-4, 7-8.[8]

Second, Plaintiff argues that Defendants placed him in medical keeplock/isolation, ignored his complaints of right shoulder pain, and delayed surgery, in retaliation for filing grievances and lawsuits related to his medical care.  Dkt. No. 111 at ¶¶ 5-6, 21, 24, 25; Dkt. No. 111-1 at ¶¶ 10, 25; Dkt. No. 111-2 at 6.

---

[7]     Plaintiff's "Statement of Undisputed Facts" does not contain citations to the record.  *See* Dkt. No. 111-1.

[8]     In opposition to the motion, Plaintiff asserts Fourteenth Amendment claims related to neck pain. Dkt. No. 111-1 at ¶ 28.  This claim did not survive the Court's section 1915 review and therefore, is not properly before the Court.  *See* Dkt. Nos. 9, 15, 50.

## II.  GOVERNING LEGAL STANDARD

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).   As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg*., 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted).  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986).  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant.  *Anderson*, 477 U.S. at 255.  Furthermore, where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  *See Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally," ... and that such submissions must be read to raise the strongest arguments that they "suggest," .... At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, ... or arguments that the submissions

8

> themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by pro se litigants," ... and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law."

*Id*. (citations and footnote omitted); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191–92 (2d Cir. 2008).  Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

### III.  DISCUSSION[9]

### A.  Medical Indifference Claims

While the Eighth Amendment " 'does not mandate comfortable prisons,' neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).  "These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976).  Pretrial detainees "receive protection against mistreatment at the hands of prison officials under . . . the Due Process Clause of the Fourteenth Amendment" rather than under the cruel and unusual punishment clause of the Eighth Amendment.  *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  Unlike a convicted prisoner, a pretrial detainee may not be punished in any manner, "neither cruelly and unusually nor otherwise." *Id*.

"A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the

---

[9]    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to Plaintiff.

challenged conditions." *Darnell*, 849 F.3d at 29.  Such a claim is typically analyzed under a

two-pronged standard.  The objective prong of the deliberate indifference analysis is the

same as a convicted prisoner under the Eighth Amendment.  *Id*. at 30.  To satisfy the

objective requirement, the Second Circuit has said that

> [d]etermining whether a deprivation is an objectively serious
> deprivation entails two inquiries. The first inquiry is whether the
> prisoner was actually deprived of adequate medical care. As
> the Supreme Court has noted, the prison official's duty is only
> to provide reasonable medical care . . . . Second, the objective
> test asks whether the inadequacy in medical care is sufficiently
> serious. This inquiry requires the court to examine how the
> offending conduct is inadequate and what harm, if any, the
> inadequacy has caused or will likely cause the prisoner.

*Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006) (citations omitted).

Deprivation of medical treatment is "sufficiently serious" if the injury or illness is one

where there is "a condition of urgency, one that may produce death, degeneration, or

extreme pain." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (internal citation

omitted).  "Factors relevant to the seriousness of a medical condition include whether a

reasonable doctor or patient would find it important and worthy of comment, whether the

condition significantly affects an individual's daily activities, and whether it causes chronic

and substantial pain." *Salahuddin*, 467 F.3d at 280 (quotation marks and alterations

omitted).

Where the allegation is that the defendant delayed providing treatment, "it is appropriate

to focus on the challenged delay or interruption in treatment rather than the [detainee's]

underlying medical condition alone in analyzing whether the alleged deprivation is, in

'objective terms, sufficiently serious[.]' " *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir.

10

2003) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).  In the context of a delay, the Court must consider whether the delay worsened the medical condition and the reason for the delay.  *Id*. at 186.  "Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, the Second Circuit has reserved such a classification for cases in which, for example, officials ignored a life-threatening and fast-degenerating condition for three days, or delayed major surgery over two years."  *Jones v. Westchester County*, 182 F.Supp.3d 134, 155 (S.D.N.Y. 2016).

"Prison officials are not obligated to provide inmates with whatever care the inmates desire.  Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is reasonable."  *Jones v. Westchester Cnty. Dep't of Corrs*., 557 F.Supp.2d 408, 413 (S.D.N.Y. 2008).

As to the "mens rea" prong, a pretrial detainee must allege facts showing that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."  *Darnell,* 549 F.3d at 35.  With respect to a deliberate medical indifference claim, "an official does not act in a deliberately indifferent manner toward an arrestee unless the official 'acted *intentionally* to impose the alleged condition, or *recklessly* failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.' "  *Bruno v. City of Schenectady*, 727 Fed. App'x 717, 720 (2d Cir. 2018) (emphasis supplied).  "Whether the state knew or should

have known of the substantial risk of harm to the detainee is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Charles v. Orange County*, 925 F.3d 73, 87 (2d Cir. 2019).   "A factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Hong v. Aigle*, No. 18-CV-8110, 2020 WL 2836309, at *4 (S.D.N.Y. June 1, 2020) (quoting *Farmer*, 511 U.S. at 842).

It is well settled however, that "[i]nmates do not have a right to chose [sic] a specific type of treatment." *Veloz v. New York*, 339 F.Supp.2d 505, 525 (S.D.N.Y. 2004).   "[A]ny § 1983 claim for a violation of due process requires proof of a mens rea greater than mere negligence[.]"   *Hong,* 2020 WL 2836309, at *4 (quoting *Darnell*, 849 F.3d at 36).   Malpractice does not become a constitutional claim because the plaintiff is an inmate or pretrial detainee. *Sonds v. St. Barnabas Hosp. Corr. Health Servs*., 151 F.Supp.2d 303, 311 (S.D.N.Y. 2001); *Davis v. McCready*, 283 F.Supp.3d 108, 121 (S.D.N.Y. 2017) (*Darnell* "reaffirmed that something more than negligence is needed to elevate a claim of medical misconduct to a constitutional tort.").

### 1. Diabetes

Plaintiff claims that Defendants deprived him of treatment for his high blood sugar levels from July 2016 until October 13, 2016.   *See generally*, Sec. Am. Compl. at 13.   Plaintiff also alleges that when "levels were back in normal range," Defendants provided inadequate treatment.   *See id.*

### a. Objective Prong

From July 28, 2016 until October 13, 2016, the medical staff at the Saratoga C.J. tested

Plaintiff's blood sugar on a weekly basis.  Dkt. No. 104-12 at ¶ 7; Dkt. No. 104-13 at 86.

Keefer acknowledges that Plaintiff's sugar levels began to rise in October 2016 and attributes

the increase to Plaintiff's "non-compliance with the requirement of a fasting test" and his diet.

Dkt. No. 104-12 at ¶¶ 7-8.  McInerney concurs with Keefer's opinion that the increase in

Plaintiff's sugar level was due to his failure to fast prior to testing and "poor food choices in

his commissary purchases."  Dkt. No. 104-17 at ¶¶ 4-6.  Conversely, Plaintiff asserts that his

eating could not have been the cause of the erratic readings because he ate the "same

snacks through August and September with no change in sugar[.]"  Dkt. No. 111-3 at ¶¶ 11-

12.

Although the reasons for Plaintiff's rising blood sugar levels are disputed by the parties,

the record clearly establishes that Plaintiff was not treated for diabetes for the first three

months of his confinement.  Accordingly, the Court turns to the question of whether the

deprivation of medical treatment was sufficiently serious.  In that regard, Plaintiff alleges that,

during the relevant three month period, he was "irate," and "concerned," and claims that he

repeatedly told Defendants that his sugar levels were "unusual."  Dkt. No. 111-3 at ¶ ¶ 10,

16, 17, 19.  Initially, the Court notes that there is no support in the record for the claim that

Plaintiff complained about his blood sugar levels.  From July 2016 until October 14, 2016,

Plaintiff submitted thirteen Medical Request Forms and did not mention his blood levels in

any of the forms.  Dkt. No. 104-13 at 28-30.  Second, even assuming that Plaintiff "alerted"

Defendants to his "erratic" readings and that he was "irate" or "concerned," without more,

does not demonstrate that Plaintiff suffered a sufficiently serious injury as a result of

Defendants' failure to address his blood sugar levels before October 2016.  Indeed, Plaintiff

complained of no diabetic issues, complications, or symptoms other than experiencing a

"diabetic tingle" in August 2016.[10]  Dkt. No. 104-13 at 30-31.  These complaints do not "rise to the level of a condition of urgency producing 'death, degeneration, or extreme pain.' " *Cruz v. Corizon Health Inc*., No. 13-CV-2563, 2016 WL 4535040, at *6 (S.D.N.Y. Aug. 29, 2016) (finding no evidence to satisfy the "sufficiently serious" portion of the objective standard where the plaintiff suffered a twenty-pound weight loss, loss of sleep, migraines, and fear due to the defendant's treatment of diabetes).  Simply put, the record lacks any evidence establishing that the deprivation of medical treatment for diabetes caused any harm to Plaintiff.  Accordingly, the Court finds no evidence from which a reasonable factfinder could conclude that Plaintiff suffered any "sufficiently serious" harm due to Defendants' failure to diagnose his condition earlier than October 2016 to meet the objective prong of the Fourteenth Amendment analysis.

### b.  Subjective Prong

Even assuming Plaintiff satisfied the objective prong of the analysis, as discussed *supra*, "[t]he subjective prong of an inadequate medical care claim under the Fourteenth Amendment requires that the defendant knew or should have known of an excessive risk to the plaintiff's health or safety and intentionally or recklessly disregarded that risk." *Campanello v. N.Y.C.D.O.C. Comm'r Joseph Ponte*, No. 16 CIV 7432, 2017 WL 4122705, at *4 (S.D.N.Y. Aug. 22, 2017) (citations omitted).

In this regard, Plaintiff claims that Defendants denied his requests for diabetic medication and ignored his concerns regarding his rising blood sugar levels.  Dkt. No. 111-2 at 4; Dkt.

---

[10]     An independent review of the medical record reveals two references to diabetes during the three month period.  In August 2016, Plaintiff submitted two medical requests for sneakers.  In those requests, Plaintiff wrote, "[r]equesting sneakers bad ankle & spine and diabetic tingle" and "[p]lease provide permission for sneakers for ankle and foot [problems] an[d] addition to being diabetic w/tingling."  Dkt. No. 104-13 at 30-31.

No. 111-3 at ¶ 16.  However, these claims are wholly conclusory and unsupported by competent, admissible evidence.  The medical record indicates that, from July 2016 until October 2016, Plaintiff submitted thirteen requests for medical attention for a variety of complaints including shoulder pain, back and neck pain, cold symptoms, skin irritation, blurry vision, a spider bite, and swollen testicles.  *See* Dkt. No. 104-13 at 28-32.  Notably absent from those requests is any mention of elevated blood sugar levels or requests for diabetic medication.  *See id.*  Further, in September 2016, Plaintiff was examined for complaints related to a spider bite.  Dkt. No. 104-13 at 22.  The record of that examination lacks any reference to Plaintiff's diabetes or complaints related to diabetic symptoms.  *See id.*  Plaintiff has not proffered any evidence establishing that he requested and was denied diabetic treatment including what request was made, to whom it was made, when it was made, and the response, if any, to his request.

The first record of any complaint by Plaintiff, related to his blood sugar levels, was in October 2016.  Dkt. No. 104-13 at 22.  In response, Keefer prescribed Metformin (500 mg/twice a day), Lantus (every evening), and NovoLog (before meals).  Keefer also placed Plaintiff on a diabetic diet and ordered lab work.  Dkt. No. 104-12 at ¶ 7; Dkt. No. 104-13 at 17, 87-94, 127; Dkt. No. 104-17 at ¶ 4.  Defendants also began monitoring Plaintiff's blood sugar levels on a daily basis.  Dkt. No. 104-13 at 75-86.  On Keefer's orders, Plaintiff's Metformin dosage was increased to 1000 mg, twice a day, on October 16, 2016 and his Lantus was increased every third day beginning on October 26, 2016.  Dkt. No. 104-17 at ¶ 4.  In November 2016, Defendants began monitoring Plaintiff's blood sugar levels two, three or four times a day, and continued to do so until March 20, 2017.  Dkt. No. 104-13 at 75-86.  McInerney stated that the medical unit, "cautiously add[ed] or increas[ed] medications slowly,

15

to see how it affected his blood sugar and to prevent him from having a hypoglycemic emergency." *Id.* at ¶ 4.

Based upon the record before the Court, no reasonable factfinder could conclude that Defendants intentionally or recklessly failed to act with reasonable care to mitigate any risk posed by Plaintiff's high blood sugar. *See Roberts v. C-73 Med. Dir.,* No. 1:14-CV-5198, 2015 WL 4253796, at *4 (S.D.N.Y. July 13, 2015) (finding no deliberate indifference where the plaintiff acknowledged that when his condition worsened, the defendant referred him to a specialist).

While Plaintiff alleges that Defendants should have known that he was taking medication (including Doxycycline, Keflex, and Cortisone), which "are known to interfere with blood sugar testing" and created a "dangerous risk," *see* Dkt. No. 111-1 at ¶¶ 15-16, 19; Dkt. No. 111-3 at ¶¶ 7-8, 10, 15, the question of whether Defendants should have identified the risk posed by the medications in connection with elevated blood levels, is, at best, an issue of medical malpractice or negligence, and not a constitutional violation. *See Mastroianni v. Reilly*, 602 F.Supp.2d 425, 436 (E.D.N.Y. 2009); *Kucharczyk v. Westchester Cnty*., 95 F.Supp.3d 529, 537 (S.D.N.Y. 2015).

Plaintiff also argues that Defendants acted with deliberate indifference when they "forced" him into isolation when his blood levels were normal and "increased insulin dosages" despite the fact that the medication did not moderate his sugar levels. *See generally*, Dkt. No. 111-3. "To the extent that [P]laintiff believed that different treatment would remedy his diabetes symptoms, this belief does not amount to inadequate medical care as [P]laintiff's concerns constitute nothing more than a mere disagreement with [Defendant's] treatment

16

plan, which is not actionable under the Eighth Amendment." *Green v. Venettozzi*, No. 9:14-CV-1215 (BKS/CFH), 2018 WL 7917917, at *19 (N.D.N.Y. Nov. 21, 2018) (citing *Randle v. Alexander*, 960 F.Supp.2d 457, 481 (S.D.N.Y. 2013)); *see also Scott v. Laux*, 07-CV-0936, 2008 WL 4371778, at *4 (N.D.N.Y. Sept. 18, 2008) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a § 1983 claim.").

Plaintiff's claims of deliberate indifference are further undermined by the fact that Plaintiff periodically refused to take his medication or appear in the medical unit for blood sugar testing. Dkt. No. 111-3 at ¶ 25; Dkt. No. 104-13 at 78-86.

Based upon the aforementioned record, no reasonable juror could conclude that Defendants were deliberately indifferent to Plaintiff's serious medical needs. Accordingly, it is recommended that Defendants' motion for summary judgment and dismissal of Plaintiff's Fourteenth Amendment claim related to his treatment for diabetes, be granted.

### 2. Right Shoulder

Plaintiff claims that Defendants ignored his complaints of pain and delayed shoulder surgery, contrary to Dr. Silver's recommendations, in violation of his Fourteenth Amendment rights. Dkt. No. 111-1 at ¶ 9, 24. Defendants argue that Plaintiff's right shoulder complaints were "correctly and appropriately attended to[.]" Dkt. No. 104-18 at 4.

### a. Complaints of Pain

### i. Objective Prong

When evaluating adequacy of care, the court examines if an individual providing care to a detainee acted unreasonably under the circumstances. *Salahuddin*, 467 F.3d at 279-80

(citing *Farmer*, 511 U.S. at 845).  Upon his arrival at Saratoga C.J., Plaintiff complained of

right shoulder pain and was prescribed a non-steroidal anti-inflammatory drug, Naproxen.

Dkt. No. 104-13 at 9-10,130.  On August 1, 2016, four days after Plaintiff arrived at the

Saratoga C.J., Keefer referred Plaintiff to OrthoNY for an evaluation of his right shoulder.  *Id.*

at 74.  On September 1, 2016, Plaintiff was examined by Dr. Fein and received a steroid

injection.  *Id*.  Plaintiff told Dr. Fein that he did not "tolerate NSAIDs" and stated that he had

"some improvement with Flexeril."  Dkt. No. 104-15 at 17.  Therefore, Dr. Fein "made a

recommendation to the [j]ail" and Keefer prescribed the medication.  Dkt. No. 104-13 at 18,

129.  On October 13, 2016, Keefer referred Plaintiff for a second examination with Dr. Fein.

*Id*. at 62.  Dr. Fein recommended an MRI of Plaintiff's right shoulder, which Keefer ordered,

and was performed on October 21, 2016.  *Id.* at 59-60; Dkt. No. 104-15 at 25.  In December

2016, Keefer referred Plaintiff for a third examination at OrthoNY and, on December 14,

2016, Plaintiff was examined by Dr. Silver.  Dkt. No. 104-13 at 53; Dkt. No. 104-15 at 10-11.

Dr. Silver made "recommendations [. . .] to proceed with surgery for an arthoroscopic cuff

repair with biceps tenodesis."   Dr. Silver noted that Plaintiff's incarceration was an

"increased risk for him during the recovery phase[.]" Dkt. No. 104-15 at 11.

In light of the fact that Plaintiff received two different medications, including the

medication of his choice, an x-ray, an MRI, and was examined on three separate occasions

by orthopedic specialists, no reasonable juror could find that Plaintiff's complaints of shoulder

pain were ignored or that he was actually deprived of adequate medical care for his

allegations of pain.

### b. Delay/Deny Surgery

### i. Objective Prong

Plaintiff argues that Defendants deliberately delayed surgery, despite Dr. Silver's recommendations.  Dkt. No. 111-2 at ¶ 7.  Keefer claims that she discussed the proposed surgical procedure and recovery with Dr. Silver and, in particular, the need for rehabilitative therapy and twenty-four hour nursing (services which were not available at Saratoga C.J.), the risk of post-operative complications, and Plaintiff's impending move to a State facility, which would prohibit the surgeon from providing further treatment.  Dkt. No. 104-12 at ¶¶ 15, 16.  Keefer attests that she and Dr. Silver agreed that the procedure should not be conducted until Plaintiff "was settled into a State facility."  *Id.*

While Keefer's statements are included in her sworn affidavit, the conclusions she draws are contradicted by a medical record entered on January 27, 2017.  The notation, entered by Nurse Muller, reads "T/C from Dr. Silver's office.  His recommendation is that inmate cannot wait a year for surgery due to retraction of a tendon and atrophy.  Recommendation is to have surgery within the next three months."  Dkt. No. 104-13 at 19.

Without an affidavit from Dr. Silver or Nurse Muller, and viewing the record in a light most favorable to Plaintiff, a reasonable juror could conclude that Defendants' decision to delay and/or deny surgery constituted an objectively serious deprivation of medical care.  *See Lehal v. Cent. Falls Det. Facility Corp*., No. 13 CV 3923, 2019 WL 1447261, at *24 (S.D.N.Y. Mar. 15, 2019) ("While the evidence in the record does not conclusively establish that [the plaintiff's] shoulder surgery was of such urgency that it should not have been delayed until he was transferred out of [the facility], there is substantial evidence from which a jury could conclude that [the defendant's] decision to delay [the plaintiff's] surgery for more than three

months [. . .] constituted an objectively serious deprivation of medical care.").

## ii. Subjective Prong

As discussed *supra*, "[a]lthough a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years." *Demata v. New York State Corr. Dep't Heath Servs.,* 198 F.3d 233 (2d Cir. 1999) (internal citations omitted).

Here, the record lacks any evidence establishing that Plaintiff's condition was "life-threatening" or that it deteriorated as a result of the decision to delay surgery. From December 2016 until March 2017, Plaintiff submitted six medical request forms with complaints related to his eyeglasses, difficulty breathing and sleeping, respiratory issues, digestion issues, tooth pain, and vomiting. Dkt. No. 104-13 at 25-26. Notably absent from those requests is any reference to Plaintiff's shoulder or complaints of shoulder pain, worsening or otherwise. Plaintiff has failed to proffer evidence that Defendants refused to schedule surgery after he complained about worsening shoulder pain, or that his condition somehow deteriorated and his complaints were ignored. Therefore, Plaintiff has failed to establish that Defendants knew of or disregarded his medical needs by delaying the surgery. *See Alster v. Goord*, 745 F.Supp.2d 317, 334 (S.D.N.Y. 2010) (finding that the seven-month delay before scheduling surgery was reasonable under the circumstances and supported by the fact that the plaintiff did not make any complaints during that time).

Additionally, the record lacks evidence suggesting that Defendants withheld medical

treatment as a form of punishment.  Rather, for the three months between Dr. Silver's consultation and Plaintiff's transfer out of Saratoga C.J., Plaintiff continued to receive Flexeril and Naproxen for his right shoulder pain.  Dkt. No. 104-15 at 115, 121, 123.  Defendants also provided Plaintiff with medical treatment for a variety of ailments including treatment at Saratoga Hospital for respiratory issues.  During that period, Plaintiff also received approximately thirteen different medications to treat a variety of complaints and illnesses including diabetes, acid reflux, hypertension, high cholesterol, sinus congestion, and respiratory issues.  Dkt. No. 104-13 at 119-124.  This evidence does not support Plaintiff's claim that Defendants were intentional or reckless or disregarded an excessive risk to his medical needs.  *See Norman v. Marcilla*, No. 17-CV-9174, 2019 WL 3066426, at *5 (S.D.N.Y. July 11, 2019) (dismissing deliberate medical indifference claim where the defendants delayed surgery for eight months, during which the plaintiff attended multiple appointments) (collecting cases); *see also Henderson v. Sommer*, No. 08 CIV. 3440, 2011 WL 1346818, at *4 (S.D.N.Y. Apr. 1, 2011) (dismissing deliberate medical indifference claim based upon delay in scheduling surgery because the plaintiff was treated regularly with pain medication and orthopedic consults and the delay resulted from scheduling constraints and the plaintiff's transfer to state custody).

Plaintiff claims that Defendants' deliberate intent is evident by the fact that Keefer took "vacations knowing my need [for surgery]" to place the expense on the state rather than the county.  Dkt. No. 51-1 at 2.  While Keefer does not dispute that she was concerned with the timing of the surgery in relation to Plaintiff's impending transfer, this fact, without more, is insufficient to show that Keefer disregarded an excessive risk to Plaintiff's health or safety, or acted with a reckless state of mind.  *Lehal*, 2019 WL 1447261, at *26 (finding that the

defendant's decision to delay orthopedic surgery pending transfer to another facility, without additional facts, was insufficient to satisfy the subjective element of the Fourteenth Amendment claim) (citation omitted);

To the extent that Plaintiff alleges that Defendants were indifferent because they failed to follow the advice of the specialist, that claim also fails.  A constitutional claim does not arise when a doctor disagrees with the professional judgment of another doctor.  *Ravenell v. Van der Steeg*, No. 05 CIV 4042, 2007 WL 765716, at *6 (S.D.N.Y. Mar. 14, 2007).  Here, Keefer exercised professional judgment to "administer a course of treatment she deemed in the best interest of her patient consistent with the available resources."  *Matos v. Gomprecht*, No. 11-CV-1968, 2012 WL 1565615, at *8 (E.D.N.Y. Feb. 14, 2012).

While "a lengthy, unjustifiable delay in providing necessary medical treatment might evidence deliberate indifference," in light of the circumstances presented herein, a three-month delay does not amount to a constitutional violation.  *See Bennett v. Care Correction Sol. Med. Contracter*, No. 15 CIV. 3746, 2017 WL 1167325, at *8 (S.D.N.Y. Mar. 24, 2017) (reasoning that the record established that during the delay, the defendants did not ignore the plaintiff's complaints but rather, monitored and treated the plaintiff's condition).  Plaintiff's allegation that Defendants' decision to delay did not serve any "penological purpose" or was in some way improper, is "based on pure speculation, and, as such, it is insufficient to preclude summary judgment" in Defendants' favor.  *See Lehal*, 2019 WL 1447261, at *27.  Accordingly, the undersigned recommends that Defendants' motion for summary judgment and dismissal of Plaintiff's Fourteenth Amendment claims related to his shoulder surgery, be granted.

### B.  First Amendment Retaliation

Defendants move for summary judgment and dismissal of Plaintiff's retaliation claims.  A cognizable retaliation claim pursuant to 42 U.S.C. § 1983 lies when prison officials take an adverse action against an inmate that is motivated by the inmate's exercise of a constitutional right, including the free speech provisions of the First Amendment.  *See Friedl v. City of N.Y.*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws.").  As the Second Circuit has repeatedly cautioned, however, because such claims are easily incanted and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus, courts must approach such claims "with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *accord, Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).

To state a prima facie claim pursuant to 42 U.S.C. § 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that (1) the conduct at issue was protected, (2) the defendants took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action–in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007).

The causal connection between the protected conduct and adverse action "must be sufficient to support an inference that the protected conduct played a substantial part in the

adverse action." *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002).  "In determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation." *Id*. (citing *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir. 1995).  With respect to proximity, a plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action.  *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted). While there is no "bright line" defining the limits of the temporal relationship, courts in the Circuit have held that an adverse action taken within three months after a protected activity can reasonably be perceived as retaliatory.  *See Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty*., 252 F.3d 545, 554 (2d Cir. 2001); *see also Ashok v. Barnhart*, 289 F.Supp.2d 305, 314 (E.D.N.Y. 2003) (the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months).

   If the plaintiff carries the burden of establishing a prima face case, then to avoid liability the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff even in the absence of the protected conduct.  *Mount Healthy*, 429 U.S. at 287.  If taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).

Analysis of retaliation claims thus requires careful consideration of the protected activity in which the inmate plaintiff has engaged, the adverse action taken against him or her, and the evidence tending to link the two. When such claims, which are exceedingly case specific, are alleged in only conclusory fashion, and are not supported by evidence establishing the requisite nexus between any protected activity and the adverse action complained of, a defendant is entitled to the entry of summary judgment dismissing plaintiff's retaliation claims. *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

On November 8, 2016, Plaintiff filed a grievance (#093-2016) claiming that the medical department delayed his treatment and retaliated against him by placing him in medical keeplock. Dkt. No. 51-1 at 2. On November 12, 2016, Plaintiff filed a lawsuit in New York State Court, County of Saratoga, against multiple defendants, including Keefer, claiming that Defendants were negligent and deliberately indifferent to his serious medical needs. Dkt. No. 51-1 at 7-13. In January 2017, Plaintiff filed a grievance (#008-2017) complaining that "medical" and Dr. Keefer were "deliberately putting surgery off while [the] doctor takes vacations." Dkt. No. 104-13 at 192.

Here, Defendants do not dispute that Plaintiff engaged in protected conduct. Dkt. No. 104-18 at 7-8; *see Flood v. Cappelli*, 18-CV-3897, 2019 WL 3778736, at *7 (S.D.N.Y. Aug. 2, 2019) (collecting cases) (holding that the filing of a grievance is protected speech).

### 1. Isolation/Medical Keeplock

With respect to the second prong of the retaliation analysis, Defendants argue that Plaintiff's confinement in isolation/medical keeplock did not constitute an "adverse action."

25

Dkt. No. 104-18 at 7.  Defendants do not cite to any supporting caselaw and, based upon the record, the Court disagrees.  The Second Circuit has held that being placed in keeplock for three weeks is an adverse action.  *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004); *see also Flemming v. Wurzberger*, 322 Fed. App'x 69, 71-72 (2d Cir. 2009) (holding that the plaintiff's retaliation claim should not have been dismissed where he alleged that he was transferred from the medical unit at Walsh Regional to Upstate Correctional Facility, with limited medical facilities in order to cause him serious harm, in retribution for filing lawsuits). Here, Plaintiff was transferred, on three separate occasions, to medical keeplock, keeplock, or isolation.  Plaintiff claims that each confinement lasted for "about [a] week."  Dkt. No. 111-3 at ¶¶19, 23.  Plaintiff also alleges that while he was in keeplock, he was isolated from the general population, his food was confiscated, and he was denied commissary privileges. Dkt. No. 104-7 at 7; Dkt. No. 111-3 at ¶ 23, 24.  Defendants have moved for summary judgment and thus, bear the burden of establishing that no issue of fact exists as to whether Plaintiff's confinement was an adverse action.  Here, Defendants have not met that burden. The record before the Court lacks any evidence related to the type of confinement, duration of confinement, or conditions of Plaintiff's confinement in isolation.  As a result, arguably there is a genuine issue of fact with respect to whether Plaintiff's confinement was an adverse action.

Defendants' argument related to the third prong of the retaliation analysis is one-sentence in length.  Defendants summarily conclude that "there is no proof of causal connection between the law suits and grievances filed by this plaintiff, and the actions taken to curtail the plaintiff's inappropriate eating habits."  Dkt. No. 104-18 at 8.  Despite the lack of analysis or any facts supporting the argument, the admissible evidence compels the

undersigned to conclude that there was no causal connection between the protected conduct and adverse action.

It is undisputed that Plaintiff first engaged in protected conduct on November 8, 2016 when he filed a grievance against the "medical department."[11]  Dkt. No. 51-1 at 2.  Because the protected conduct occurred <u>after</u> Plaintiff was placed in keeplock in October and November 2016, Plaintiff has not established a prima face retaliation claim related to the first two instances of isolation.

With respect to the February 2017 confinement, Plaintiff alleges that Pienkoski "insisted on medical keeplock" and retaliated against him for exercising his rights to write grievances. Dkt. No. 111-2 at 6; Dkt. No. 111-3 at ¶ 33.  While Plaintiff engaged in protected conduct in January 2017, Dkt. No. 104-13 at 192, temporal proximity is not enough to preclude summary judgment.  "[C]ourts in this Circuit have repeatedly declined to find evidence of a causal connection where a plaintiff alleged retaliation by a defendant for complaints against other officers or employees." *Woodward v. Affify*, 14-CV-0856, 2018 WL 987523, at *13 (W.D.N.Y. Sept. 28, 2018) (citing *Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009) (dismissing retaliation claim against a corrections officer where the only alleged basis for retaliation was a complaint about an incident involving another officer)); *Hare v. Hayden*, 09-CV-3135, 2001 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) ("As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant."). Here, the January 2017 grievance lacks any reference to Pienkoski and Plaintiff's conclusory claim that Pienkoski "showed great contempt towards [him]," is not supported by any

---

[11]       Plaintiff's state court action, which also constitutes protected conduct, was signed on November 12, 2016.  Dkt. No. 51-1 at 13.

competent evidence.  Dkt. No. 111-3 at ¶ 28.

Even assuming that Plaintiff established a prima facie retaliation claim with respect to his time in keeplock confinement/isolation, the record reflects Defendants' legitimate, non-retaliatory reason for transferring Plaintiff to keeplock, to address Plaintiff's unstable and unmanaged blood sugar levels.  Dkt. No. 104-12 at ¶¶ 8-11; Dkt. No. 104-13 at 19, 23; Dkt. No. 104-16 at ¶ 4.  Indeed, the record includes sworn statements by Plaintiff which support the conclusion that Defendants' decision was not retaliatory in nature.  To wit, Plaintiff admits that his erratic readings, continued rise [in blood sugar levels] "even with the increase in insulin dosages," and refusal to accept medications, "earned him isolation[.]" Dkt. No. 111-1 at ¶ 10; Dkt. No. 111-3 at ¶¶ 19, 23, 27.

Because the record before the Court, even when construed most favorably towards Plaintiff, lacks evidence undermining Defendants' legitimate, non-retaliatory reason for placing Plaintiff in isolation/keeplock, the Court recommends that Defendants' motion for summary judgment and dismissal of the retaliation claims be granted.  *See Nieblas v. Ricci*, No. 03-CV-6225, 2008 WL 163686, at *7 (W.D.N.Y. Jan. 16, 2008) (granting summary judgment where the plaintiff failed to submit admissible proof to counter the defendant's evidence that same actions would have been taken against him in the absence of the alleged retaliation).

### 2.  Treatment for Shoulder Pain

Plaintiff claims that Defendants ignored his complaints of pain and loss of use of his right shoulder in retaliation for his grievances.  *See* Dkt. No. 111-2 at 6-7.  Initially, the Court notes that this claim was not alleged in the Second Amended Complaint.  "Generally, parties may

not amend their complaints through their submissions on summary judgment." *Kravitz v. Leis*, 803 Fed. App'x 547, 548 (2d Cir. 2020) (citation omitted).  Here, even assuming this claim is properly before the Court, it is subject to dismissal.

Although "preclusion from medical treatment subsequent to, and because of [grievances or complaints] is an appropriate statement of an adverse action," *see Harrington v. Mid-State Corr. Facility*, No. 09-CV-85 TJM/DRH, 2010 WL 3522520, at *5 (N.D.N.Y. May 21, 2010), the evidence before the Court does not suggest that Plaintiff was denied medical treatment, for any complaint, after he filed grievances and a lawsuit in November 2016.  Between November 2016 and Plaintiff's transfer out of the Saratoga C.J., Plaintiff had two eye examinations and an orthopedic examination, received eyeglasses, was admitted to Saratoga Hospital for treatment and testing, and received medications on a daily basis. Accordingly, Plaintiff has failed to proffer evidence establishing a plausible retaliation claim based upon the alleged denial or withholding of medical treatment.

### 3.  False Entries

In the Second Amended Complaint, Plaintiff claimed that Defendants retaliated against him when they falsified entries related to his blood sugar levels.  *See* Dkt. No. 111-1 at ¶¶ 5-6; Dkt. No. 111-3 at ¶ 9.  While this claim survived the Court's initial review, *see* Dkt. No. 50 at 14, Plaintiff has not proffered any evidence in support of that claim.  Plaintiff summarily claims that the blood sugar log "doesn't match plaintiff's handwritten notes" but concedes that he cannot produce the handwritten notes because they were confiscated by staff.  *See* Dkt. No. 111-2 at 4.  Moreover, Plaintiff has failed to proffer any further facts or information related to the notes or the alleged confiscation.  Without more, conclusory allegations that

prison officials fabricated medical records are not enough to withstand summary judgment. *See Lewis v. Johnson*, No. 9:09-CV0482 (TJM/ATB), 2010 WL 3785771, at *20 (N.D.N.Y. Aug. 5, 2010) (citations omitted) (holding that the plaintiff's conclusory allegations that medical professionals fabricated medical records is insufficient to "sway any rational fact finder").

Accordingly, for the reasons set forth herein, the Court recommends granting Defendants' motion for summary judgment and dismissing Plaintiff's retaliation claims.

## IV.  CONCLUSION

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that Defendants' motion for summary judgment and dismissal (Dkt. No. 104) be **GRANTED**; and it is further

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules; and it is further

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[12] days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL**</u>

---

[12]    If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(c).

30

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)

(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28

U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

DATED: July 13, 2020

Miroslav Lovric
U.S. Magistrate Judge

31